UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael D. Smith,

Plaintiff,

vs.

UnumProvident Corporation and
The Paul Revere Life Insurance Company,

Defendants.

Court File No 01-1301 JEL/JGL

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

## INTRODUCTION

Michael Smith, M.D. ("Smith") owns three The Paul Revere Life Insurance Company policies ("Paul Revere"), numbers 0102407185, 0102454784, and 0102588399 ("Policies"). Smith has been collecting benefits under these policies since October, 1997. Smith commenced this lawsuit on June 21, 2001 alleging he was entitled to greater disability benefits than Paul Revere was paying. The parties brought cross-motions for summary judgment on February 3, 2003. This Court determined that for purposes of determining Smith's Prior Earnings and the amount of benefits to which Smith was entitled, Smith's IME income should be included and his patent royalty income should be excluded. The Court reserved other issues for trial. Paul Revere has paid Smith residual disability benefits through 2004[1] consistent with this Court's June 17, 2003 Order.

[1] Smith has not submitted documentation to Paul Revere so that it may evaluate his entitlement to benefits for 2005.

The parties agreed that the "reserved" issues would be submitted to the Court on cross-motions for summary judgment and have submitted a Stipulation of Facts and Issues specifying that the legal issues remaining are:

(1) whether the 7% annual increase referenced in the definition of Prior Earnings in the Policies is calculated using simple or compound interest,

(2) what is the proper number of paychecks to include in the calculation of Smith's Prior Earnings under the Policies, and

(3) are Defendants equitably estopped from claiming that Smith's IME income must be included in the calculation of Monthly Earnings under the Policies.

Defendants respectfully offer this memorandum of law in support of their motion for summary judgment.

## FACTS

In 1989, 1990, and 1992 Smith purchased three separate individual disability income policies from Paul Revere. (Stipulation of Facts, ¶ 1). The Policies define total disability to mean that because of an injury or sickness the insured "cannot perform the important duties of Your Occupation" and is under the regular and personal care of a physician. (1/27/03 Jossart Aff. at Ex. A-C previously filed with the Court).

Policies 0102407185 and 0102454784 define Residual Disability as of the commencement date to mean that due to injury or sickness:

> a. Your Loss of Earnings is equal to at least 20% of Your Prior Earnings while you are engaged in Your Occupation or another occupation; and

b. You are under the regular care and personal care of a Physician.

(Stipulation of Facts at ¶ 2).

Policy 0102588399 defines Residual Disability as of the first commencement date to mean that due to injury or sickness:

> a. You incur a loss of earnings while You are engaged in Your Occupation or another occupation; and
>
> b. You are receiving Physician's Care. We will waive the right if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You; and
>
> c. You are not Totally Disabled.

(Id. at ¶ 3).

The Policies indicate that for Residual Disability benefits, the monthly amount Paul Revere will pay is calculated as follows:

$$\frac{\text{Loss of Earnings}}{\text{Prior Earnings}} \times \text{Maximum Monthly Amount}$$

(Id. at ¶ 4).

"Loss of Earnings" under Policies 0102407185 and 0102454784 means an insured's Prior Earnings less Monthly Earnings for the month for which Residual Disability is claimed. This difference must be due to the injury or sickness causing the Residual Disability. If the Loss of Earnings for any month is 80% or more of Prior Earnings, Paul Revere will deem the loss to be 100% of Prior Earnings. (Id. at ¶ 5).

"Loss of Earnings" under Policy No. 0102588399 means an insured's Prior Earnings less Monthly Earnings for the month for which Residual Disability is claimed.

This difference will be considered Loss of Earnings to the extent it is due to the injury or sickness which caused the disability. The Loss of Earnings must be at least 20% of Prior Earnings. If the Loss of Earnings for any month is 75% or more of Prior Earnings, Paul Revere will deem the loss to be 100% of Prior Earnings. (Id. at ¶ 6).

"Prior Earnings" under Policies 0102407185 and 0102454784 is defined as the greater of the following:

> a. Your average Monthly Earnings for the 6 calendar months just before Your Disability began; or
>
> b. Your highest average Monthly Earnings for any 2 successive years during the 5-year period just before Your Disability began.

(Id. at ¶ 7).

Prior Earnings is defined under Policy No. 0102588399 as the greater of the following:

> a. Your average Monthly Earnings for the year just before Your Disability began; or
>
> b. Your highest average Monthly Earnings for any 2 successive years during the 5-year period just before Your Disability began.

(Id. at ¶ 8).

All three definitions of Prior Earnings contain the following language:

> Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings. We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable. However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

(Id. at ¶ 9).

The Policies all define "Monthly Earnings" to mean:

> Your salary, wages, commissions, bonuses, fees, and income earned for services performed. If You own any portion of a business or profession, it means:
>
> a. Your share of the income earned by that business or profession;
>
> b. Less Your share of business expenses which are deductible for Federal income tax purposes;
>
> c. Plus Your salary and any contributions to a pension or profit sharing plan made on Your behalf.
>
> Monthly Earnings does not include:
>
> a. Income from deferred compensation plans, disability income policies, or retirement plans; or
>
> b. Income not derived from Your vocational activities.
>
> We will allow either the cash or accrual accounting method. But during a Disability the same method must be used when determining Loss of Earnings.

(Id. at ¶ 10).

The Policies also contain substantially the same proof of loss provision:

> Written proof of loss must be sent to us within 90 days after the end of a period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year.
>
> We can also require reasonable proof from You of Your:
>
> a. Prior Earnings; and
>
> b. Monthly Earnings for the month for which Disability is claimed.

> This may include personal and business tax returns, financial statements, accountant's statements or other proof acceptable to Us. We can have an audit performed as often as is reasonably required while Your claim is continuing. Such an audit will be at Our expense.

(Id. at ¶ 11).

Smith was employed by Twin Cities Spine Surgeons, Ltd., as an orthopedic spine surgeon performing lumbar and cervical surgeries.[2] (1/31/03 Ryan Affidavit at 00072-00074 previously filed with the Court). Smith submitted an application for long-term disability benefits on or about August 13, 1997, claiming that as of July 3, 1997 he could no longer perform the important duties of his occupation due to a herniated disk in his neck (C6-C7) with severe paralysis and numbness in his left arm. (Id. at 00072). Smith claimed to have significant residual numbness and some weakness in his left arm that prohibited him from performing any orthopedic operations and further represented that he had a paralyzed vocal cord that made speech difficult. (Id. at 00075). Smith first sought care and treatment for these alleged medical conditions on July 10, 1997.

Paul Revere evaluated Smith's claim, determined he was disabled and paid Smith benefits under the total disability provisions of the Policies. During the administration of Smith's total disability claim, Paul Revere learned that Smith was receiving IME and patent royalty income through a separate entity, Smith Aeromotive, Inc.[3], created by Smith in 1993. This information was not relevant to the determination if Smith was totally disabled or the calculation of total disability benefits under the Policies. (Id. at 00424).

---

[2] Smith was also a 20% owner of this company. (Id.)

In late 1999, Smith resumed performing cervical spine surgeries[4] and established a solo clinical practice named "Cervical Spine Specialists, Inc."[5] (Id. at 00419; 00572). He continued to do IMEs and received patent royalty income. Based upon this new information, Paul Revere determined on August 29, 2000 that Smith was residually disabled and that the Policies would be administered under the residual disability provisions, taking into consideration the income Smith earned from his surgical practice, IMEs and patent royalties. (Id. at 00513).

On September 15, 2000, Paul Revere informed Smith that it required additional information to calculate residual disability benefits under the Policies and would not extend benefits beyond November 8, 2000 if it did not receive this information. (Id. at 00577-00579). Paul Revere referred Smith's current financial information to its in-house financial consultant for review and analysis and informed Smith that it would extend benefits through October 8, 2000 during this interim period. (Id. 01016-01017).

---

[3] Smith Aeromotive, Inc. is Subchapter S corporation with Smith the sole owner and shareholder. (Id. at 00575).

[4] Smith claims he was still unable to perform lumbar spine surgeries due to the increased strength needed for this procedure, but does not dispute that he is residually disabled as defined by the Policies.

[5] Cervical Spine Specialists, Inc. is a C corporation that is wholly owned by Smith. (Id. at 00575).

On October 31, 2000, Paul Revere communicated to Smith the results of its financial analysis concluding that it had overpaid Smith benefits in the amount of $28,120.00 under the three Policies, but would voluntarily forgive this overpayment through September 1, 2000. Paul Revere did indicate that no future residual disability benefits would be paid until each monthly profit and loss statement was received and evaluated in accordance with the terms and conditions of the Policies. (Id. at 01038-01040).

The parties had ongoing discussions regarding the calculation of residual disability benefits under the Policies and whether Smith's income from patent royalties and IMEs should be included in that calculation. Paul Revere determined that it required the following financial information to properly perform this calculation:

- A copy of the insured's business tax returns for Smith Aeromotive Charters, Inc. and all scheduled and attachments from 1993 forward. If the insured's royalty income from this business is not listed separately on the tax returns, a breakdown of the royalty income and any unearned income will be needed for each year.

- Monthly profit and loss statements for Smith Aeromotive Charters, Inc. for 11/99 to the present.

- Monthly profit and loss statements for Cervical Spine Specialists from 9/00 forward.

- A copy of the insured's business tax returns for Cervical Spine Specialists for the year ending 9/30/00 and all schedules and attachments.

(Id. at 01077).

On March 14, 2001, Paul Revere wrote Smith and reiterated its position that the term "Monthly Earnings" under the Policies required the consideration of all of Smith's income

when calculating residual disability benefits under the Policies, which included the IME and patent royalty income. Paul Revere further reminded Smith of the financial information needed to make this calculation. (Id. at 01082). Because Smith failed to provide the required information to calculate residual disability benefits under the Policies, Paul Revere did not pay Smith residual disability benefits beyond October 8, 2000.

Smith initiated an action in Hennepin County District Court which Paul Revere removed to the United States District Court for the District of Minnesota. (Stipulation of Facts at ¶ 14). Subsequently, the parties brought cross-motions for summary judgment before The Honorable Joan N. Ericksen. (Id. at ¶ 15). Judge Ericksen's Order determined that the exclusionary language for non-vocational activities under the definition of Monthly Earnings in the Policies was unambiguous. (Id. at ¶ 17). Judge Ericksen also ruled that Smith's IME income should be included in the definition of Monthly Earnings in the Policies but that his patent royalty income should not. (Id. at ¶¶ 18-19).

Paul Revere has paid Smith residual disability benefits through 2004 consistent with Judge Erickson's Order and will consider payment of ongoing Residual Disability benefits to Smith upon receipt of the required written proof of loss under the Policies.[6]

Smith continues to assert that his monthly disability benefits are not being properly calculated. Defendants claim that the residual disability benefits paid through

---

[6] Smith does not dispute that the information needed to calculate 2005 disability benefits has not been provided. (Id. at ¶ 20).

12/3/04 are calculated properly and consistent with the Policies. To resolve this disagreement the parties seek a determination by the Court of the following issues:

- Is the 7% annual increase referenced in the definition of Prior Earnings in the Policies calculated using simple or compound interest?

- What is the proper number of paychecks to include in the calculation of Smith's Prior Earnings under the Policies?

- Are Defendants equitably estopped from claiming that Smith's IME income must be included in the calculation of Monthly Earnings under the Policies?

(Id. at ¶ 21).

## LEGAL ARGUMENT

### I. SUMMARY JUDGMENT STANDARD.

A court may grant summary judgment if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A party seeking summary judgment bears the initial burden of informing the court of the basis of its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant carries this burden, it shifts to the non-moving part to show that summary judgment should not be granted. Celotex, 477 U.S. at 324-25. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set both specific facts showing the existence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural short cut, but rather an integral part of the Federal Rules as a whole which are designed to secure just, speedy, and inexpensive determination of every action." Fed.R.Civ.P.56; Celotex, 447. U.S. at 324 (1984).

## II. THE 7% ANNUAL INCREASE TO SMITH'S PRIOR EARNINGS MUST BE CALCULATED USING SIMPLE INTEREST.

The definition of Prior Earnings in the Policies contain the following language:

> Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings. We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable. However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

Significantly, Prior Earnings is a defined term under the Policies containing no reference to compound interest. Smith seeks to modify the definition under the Policies to require that the inflationary adjustment to his Prior Earnings be calculated using a compound interest factor of 7% while Paul Revere maintains that 7% simple interest should be applied under the plain and unambiguous policy language. The Policies state that the "inflation adjustment" is made to the "Prior Earnings" which are defined as a factor of pre-disability earnings. Prior Earnings is not defined as this pre-disability earnings number plus each successive year's inflation adjustment.

Other courts analyzing similar disability policy provisions have determined that benefits should be calculated with simple interest. In Turner v. UnumProvident

Corporation, Case No. 03-75180 (E.D. Mich. August 30, 2004), the policy contained a total and residual disability benefit rider which provided, in relevant part:

> This benefit will start on the 366th day of the Disability. This benefit will be paid monthly. The amount We will pay starts at 7 percent of the Base Amount. The Base Amount is the monthly amount of the Total or Residual Disability benefit payable under Your Policy. The Base Amount shall also include any benefit payable under a Supplemental Social Insurance Benefit Rider added to Your Policy. We will later add 7 percent of the Base Amount to the monthly amount of this benefit. We will do this on each anniversary of Your Disability, after the first, while it continues.

(Jossart Aff. at Ex. 1, pg. 7).

The plaintiff insisted that the language contained in this cost of living adjustment (COLA) rider provided for compound interest while the insurer maintained that this provision unambiguously provided for simple interest. (Id. at pg. 7). The Court agreed that a simple interest calculation was appropriate and opined as follows:

> In this Court's opinion, the word "starts" simply means that the first year that an insured is eligible for the COLA benefit, he or she will have 7% added to the base amount. Further support for this Court's conclusion that the policy does not call for compounding the COLA is the specific language which states that "We will later add 7% of the *Base Amount* to the monthly amount of this benefit. The "Base Amount" is defined as "the monthly amount of the total or residual disability benefit payable under the policy." Because the Base Amount is the fixed amount to which the insured is entitled under the policy, a plain reading of this provision indicates that Defendant only is required to add 7% to that fixed amount each year. Therefore, in this Court's opinion, the policy requires that the insured receive an interest in the COLA benefit of 7% of the Base Amount each year. The policy does not require that the 7% increase be compounded.

Id. at p. 8.

Another case analyzing the simple versus compound interest issue in the context of a COLA benefit is Nieto v. The Paul Revere Life Insurance Company, Case No. BC 290702 (Sup. Ct. Cal. January 30, 2004). (Jossart Aff. at Ex. 2). In Nieto, the plaintiff initiated an action against Paul Revere alleging breach of contract for failing to pay COLA benefits on a compound basis as required by the policy rider. Paul Revere contended that the COLA rider was for a simple increase calculation that it had been utilizing since 1997. (Id. at pg. 1). The court determined that it was proper to apply a simple, rather than a compound, interest factor to this COLA benefit calculation. Id. at p. 3.

Nieto and Turner provide persuasive authority that the 7% annual increase to Smith's Prior Earnings under the Policies should be calculated using a simple interest factor. The increase in the Policies is very similar to an annual inflationary adjustment or COLA benefit calculation. The intent of these types of policy provisions is to offset against the net effect annual inflation has on a future stream of benefit payments rather than to operate as an investment mechanism providing the insured compound interest on these future benefit payments. Accordingly, for purposes of calculating Smith's residual disability benefits under the Policies, the 7% adjustment used to calculate Prior Earnings must be done using simple interest.

## III. PAUL REVERE PROPERLY CALCULATED SMITH'S "PRIOR MONTHLY EARNINGS".

The prior earnings issue relates to two of the Policies and specifically how many paychecks are to be considered in the "6 calendar months before your disability began." [7]

For Policy Nos. 0102407185 and 0102454784, the calculation of Prior Earnings requires a determination of Smith's earnings for the six (6) calendar months prior to Smith's date of disability.

Based upon a date of disability of 7/10/97 (or 7/3/97 as asserted by Smith) the prior six (6) calendar months are January through June, 1997.[8] Defendants are prepared to calculate and pay benefits to Smith using these months.[9] Based upon a plain reading of the above Policies, Smith's position that the calculation of Prior Monthly Earnings should include all paychecks received by Smith from 1/1/97 to 7/3/97 is irrational and inconsistent with the subject Policies as it obviously includes income for a period greater than six (6) months.

## IV. PAUL REVERE IS NOT EQUITABLY ESTOPPED FROM REQUIRING SMITH'S IME INCOME TO BE INCLUDED IN THE CALCULATION OF MONTHLY EARNINGS UNDER THE POLICIES.

Judge Erickson's Order provides that Smith's IME income must be included in the calculation of Monthly Earnings to determine the payment of residual disability benefits under the Policies. Smith contends that Paul Revere should be equitably estopped from

[7] Defendants believe there is no dispute as to Policy No. 0102585399.
[8] Smith's counsel has previously acknowledged that this is the correct time period for calculating Smith's Prior Earnings. (PRLCL 01048-01050).
[9] In January, 2005, as an accommodation to Smith, Paul Revere was willing to calculate Prior Monthly Earnings considering the 6 month period prior to disability (1/10/97-7/10/97) rather than the 6 calendar months. Smith's Prior Earnings were greater if Paul Revere had used the 1/1/97 – 6/30/97 period. Now, Smith challenges the use of January 10, 1997 as the start date. Accordingly, Paul Revere asks this Court to determine that under the terms of the Policies, in calculating Prior Monthly Earnings, it should consider only Smith's earnings for the 6 calendar months before Smith's disability, January 1, 1997 to June 30, 1997 as required by the Policies.

including his IME income because it did not consider this revenue when it initially administered Smith's claim for benefits under the total disability provision in the Policies. Because Smith is unable to maintain a claim for equitable estoppel, Paul Revere is entitled to summary judgment on this issue.

**A. Equitable Estoppel.**

"Equitable estoppel prevents the assertion of otherwise valid rights where one has acted in such a way as to induce another party to detrimentally rely on those actions." Drake v. Reile's Transfer & Delivery, Inc., 613 N.W.2d 428, 434 (Minn. Ct. App. 2000). A claim for equitable estoppel arises when:

> One by his acts or representations, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another to believe certain facts to exist, and such other rightfully acts on [that belief] in such manner that if the former is permitted to deny the existence of such facts, it will prejudice the latter.

Transamerica Insurance Group v. Paul, 267 N.W.2d 180, 183 (Minn. 1978).

The party seeking to invoke the doctrine of equitable estoppel must prove that: (1) promises or representations were made, (2) they reasonably relied upon the promises or representations, and (3) they will be harmed if estoppel is not applied. Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990). In order to resist summary judgment on a claim of equitable estoppel, Smith must demonstrate specific, admissible facts creating a genuine issue for trial as to the reasonableness of his reliance. Nicollet Restoration, Inc. v. City of St. Paul, 533 N.W.2d 845, 848 (Minn. 1995).

1. Paul Revere Did Not Make Any Promises, Inducements Or Representations To Smith.

In order to survive summary judgment on his equitable estoppel argument, Smith must prove that Paul Revere made inducements, representations or promises to him regarding his IME income. Smith is unable to sustain that burden. Smith argues that Paul Revere should be equitably estopped from including his IME income in the calculation of residual disability benefits because it did not consider this income when the Policies were initially administered by Paul Revere. Smith fails to comprehend the application of the total disability versus residual disability portions of the Policies. While Paul Revere administered Smith's disability claim under the total disability definition of the Policies, Smith's income from IMEs was, by definition, not a component of that calculation. However, when Smith resumed his surgical practice on a trial basis in 1999, the Policies' language required Paul Revere to apply the residual definition portion of those Policies, which calculation required the inclusion of that IME income under "Monthly Earnings."

Because Paul Revere did not make any promises, representations or inducements to Smith regarding the inclusion of his IME income in any of its calculations under the Policies, Paul Revere is entitled to summary judgment on Smith's equitable estoppel claim as a matter of law. Krammer v. Archdiocese of St. Paul and Minneapolis, 2005 WL 14934, *3 (Minn. Ct. App. January 4, 2005) (granting defendant summary judgment on plaintiff's equitable estoppel claim due to absence of underlying claim of fraud,

prejudice or justifiable reliance);[10] Pastor v. Florey, 2000 WL 388062, *4 (Minn. Ct. App. April 18, 2000) (affirming district court's grant of summary judgment on equitable estoppel claim where plaintiff failed to present any evidence of misrepresentation or inducement).

2. Smith's Reliance Was Not Reasonable.

Even assuming that Smith can establish Paul Revere made promises, inducements or representations regarding the inclusion of his IME income in the calculation of residual disability benefits under the Policies, Smith must also prove that he reasonably relied upon them. Here, Smith is not able to establish as a matter of law that whatever reliance he may claim was reasonable under the circumstances.

Indeed, Smith has failed to offer any facts suggesting that he relied on Paul Revere to his detriment. Smith was entitled to and has received a stream of disability payments under both the total and residual portions of the Policies and did not alter or change his position in reliance upon Paul Revere's actions or representations. As a result, Smith cannot establish reasonable reliance as a matter of law. Gresser v. Hotzler, 604 N.W.2d 379, 386 (Minn. Ct. App. 2000) (affirming trial court's grant of summary judgment on equitable estoppel claim because there was no reasonable reliance as a matter of law); Franklin Outdoor Advertising Company v. Hovanetz, 1995 WL 711125, *3 (Minn. Ct. App. December 5, 1995) (determining that assertions by the plaintiff about reasonable

[10] A true and accurate copy of all unpublished decisions are attached to the Jossart Affidavit.

reliance alone without supporting facts are not sufficient to survive summary judgment on a claim for equitable estoppel).

3. Smith Cannot Recover Money Damages Under An Equitable Estoppel Claim.

In Snyder v. City of Minneapolis, 441 N.W.2d 781, 790-791 (Minn. 1989), the Minnesota Supreme Court refused to permit recovery in money damages on a theory of estoppel, holding that estoppel "does not furnish a basis for damages claims" and stating that "estoppel is . . . a shield, not a sword."

Here, Smith is asking the Court to use its equitable powers as a sword to increase his monetary damages in this lawsuit. In other words, Paul Revere's inability to include Smith's IME income in the calculation of residual disability benefits increases Smith's overall residual disability payments under the Policies. Smith's equitable estoppel claim is a veiled request for money damages that is not available under this equitable theory of recovery. Muller Family Theaters v. McMenomy, 1998 WL 462357, *3 (Minn. Ct. App. August 11, 1998) (determining that the trial court did not err in deciding that Smith could not recover monetary damages by an equitable estoppel claim).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted in its entirety.

Dated: January 13, 2006 **KRASS MONROE, P.A.**

s/C. John Jossart
John Harper, III (41397)

C. John Jossart (295048)
Suite 1100 Southpoint Office Center
1650 West 82nd Street
Minneapolis, MN 55431
Phone: 952-885-5999
Fax: 952-885-5969
*Attorneys for Defendants*

G:\WPDATA\U\UNUMPROVIDENT 10363\038-SMITH.M\PLD\MEMO OF LAW IN SUPPORT OF SJ 3.DOC