Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.
Elizabeth PASTOR, Plaintiff,
v.
Tom FLOREY, Defendant,
and
Main Street Kids, defendant and third-party plaintiff, Appellant,
v.
LAKESHORE WEEKLY NEWS, third-party defendant, Respondent.
**No. C9-99-1743.**

April 18, 2000.

Michael R. Peterson, John G. Ness & Associates, Minneapolis, MN, for appellant.

Byron M. Peterson, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, and HUSPENI, Judges. [FN*]

FN* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

AMUNDSON.

***1** Appellant seeks review of a final partial judgment dismissing its third-party claims against respondent in a personal injury action. Appellant argues that respondent is vicariously liable for the actions of defendant Thomas Florey because respondent sent Florey to take photographs for an advertisement to be placed in respondent's publication, and did not first advise appellant that Florey was not respondent's employee. Appellant first argues that Florey was actually respondent's employee. Appellant then claims that even if Florey was an independent contractor, there is sufficient evidence of control exercised by respondent over Florey to impose vicarious liability under an agency theory. Appellant also argues that respondent is equitably estopped from denying that Florey was its employee. We affirm.

FACTS

In 1993, Tom Florey began working as a self-described freelance photographer for the Lakeshore Weekly News (Lakeshore). He continued to do other freelance photography (actors, weddings), although an increasing amount of his time became devoted to photography for Lakeshore. Florey generally visited the newspaper office once or twice a week, but never for more than an hour, to deliver finished prints for publication. He had no desk at the newspaper office and did not do any of his work there; however, he did carry a card identifying him as a representative of Lakeshore.

Florey testified at deposition that on assignment, he used only used his own photo equipment. He also testified that he alone made all artistic decisions about how the work would be done, and was responsible for all developing and printing of the finished product for publication. He submitted invoices to Lakeshore on a per-hour or per-shoot basis and was reimbursed for mileage. Florey was never on the payroll of the newspaper as an employee, was never covered by Lakeshore's insurance, and was responsible for making his own tax payments. He received a 1099 form each year, for amounts paid by Lakeshore for the previous year.

In early March 1997, Lakeshore notified Florey

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
tabbies
3

that Main Street Kids (MSK) had purchased advertising space in the spring fashion issue and wanted to have a photograph included in the ad. Florey offered to shoot photographs for six to eight businesses for Lakeshore's seasonal ads, quoting Lakeshore a single price of approximately $300 for the entire package and submitting an invoice for that amount. Florey had done similar shoots for MSK's Wayzata store in previous years, and one for the Galleria MSK in 1996. As was his usual procedure, Florey called the contact person, MSK owner Stacy Bame, and arranged for the date and time to do the shoot.

When Florey arrived at MSK on March 13, 1997, Bame told him that she wanted the photographs taken in front of the store's logo in the mall promenade. Children of MSK's clients were used as models, but Florey arranged the photos, selected the props from the MSK store, and set up his camera tripod and lighting equipment. After discovering that one floor mat would be visible in the photos, Florey folded the mat and laid it in front of the inner entrance door to the mall. Elizabeth Pastor, a patron entering the mall, tripped over the mat, fell, and was injured.

***2** As a result of the injuries she sustained in the fall, Pastor brought suit against Florey and MSK. Defendant MSK brought a third-party complaint against Lakeshore Weekly News. The action between Pastor and all parties was resolved. MSK and third-party defendant Lakeshore brought cross-motions for summary judgment. The district court entered an amended judgment granting summary judgment to Lakeshore and denying the motion brought by MSK. Third-party plaintiff MSK appeals from the amended judgment.

DECISION

On an appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We view the evidence in the light most favorable to the party against whom judgment was granted, *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993), but do not defer to the district court's application of the law. *Frost-Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

I. Employment Status

MSK contends that Florey acted in the capacity of an employee of Lakeshore, rather than as an independent contractor. MSK argues that Florey had worked steadily for over three years for Lakeshore, was dispatched to job sites by Lakeshore, had a press pass identifying him as a representative of Lakeshore, had managerial duties at Lakeshore whereby he gave assignments to Lakeshore's other photographers; and finally, that his work was included as a part of the advertising fee charged to the merchants.

The factors applied in determining whether an individual is an employee or an independent contractor are:

> (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge.

*Guhlke v. Roberts Truck Lines,* 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964). Although it is necessary to examine the overall relationship between the parties to determine employment status, "the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance." *Id.*

> [T]he determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done. Basically, it is the distinction between a person who is subject to orders as to *how* he does his work and one who agrees only to do the work in his own way.

*Corbin v. Commissioner of Revenue,* 307 Minn. 237, 242, 240 N.W .2d 809, 812 (1976) (quoting *Frankle v. Twedt,* 234 Minn. 42, 47, 47 N.W.2d 482, 487 (1951)).

> It is for the trier of fact to distinguish between the "right-to-control" characteristic of an employer-employee relationship and the fact of powerful influence not inconsistent with an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

independent-contractor relationship. Our function on appeal is to determine whether its finding may reasonably be supported by the evidence.

***3** *Ossenfort v. Associated Milk Prods., Inc.,* 254 N.W.2d 672, 676 (Minn.1977).

The district court determined that Florey was an independent contractor because he exercised control over the work product and the manner of its performance by making the appointments, orchestrating the entire photographic shoot, and processing the film. The district court also relied on the fact that Florey provided all of his own materials and equipment, and determined the mode of payment by providing price quotes and then billing Lakeshore for the actual work completed. We agree.

Accordingly, Florey controlled the work product by choosing the photos to be used in the ad. As to the mode of payment, Florey billed the newspaper from his own office for his services and the expenses involved in producing the photos. Lakeshore provided Florey with a 1099 form at the end of each year and did not withhold taxes from his payments. Florey also provided his own transportation. The fourth *Guhlke* factor, the control of the premises where the work is done, is inapplicable; neither Lakeshore nor Florey controlled the locations where photography was done. Finally, the employer's right to discharge is also less clearly applicable in this case because the relationship could be determined by simply not giving Florey additional photographic assignments. Also, Florey testified that any "managerial" responsibilities, such as giving assignments to Lakeshore's other photographers, did not arise until after the incident involving Pastor.

The evidence amply supports the district court's determination that no genuine issues of material fact existed as to Florey's employment status as an independent contractor and, therefore, the district court properly granted summary judgment in favor of Lakeshore on this issue.

II. Vicarious Liability/Agency

MSK contends that Lakeshore is vicariously liable even if Florey is deemed an independent contractor because Lakeshore dispatched Florey to his job locations, instructed him as to what type of photographs or advertisements he was to shoot, and provided him with a press identification pass that specifically identified him as a representative of Lakeshore. MSK asserts that these facts show that Lakeshore retained sufficient control over Florey to establish an agency relationship and, based on that relationship, Lakeshore should be held vicariously liable for the negligent actions of Florey.

The district court found no merit in MSK's assertion that Florey was Lakeshore's agent because the record failed to show that Florey and Lakeshore had a fiduciary relationship, a conclusion necessary to finding the existence of agency.

Generally, the employer of an independent contractor is not liable for physical harm resulting from the contractor's acts. *Conover v. Northern States Power Co.,* 313 N.W.2d 397, 403 (Minn.1981) (citations omitted). Nevertheless, even if he uses his own tools and is not strictly under the physical control or supervision of the hirer, an independent contractor may be an agent of the hirer for purposes of vicarious liability if there is a fiduciary relationship, and continuous subjection to the will of the principal. *Jurek v. Thompson,* 308 Minn. 191, 198-99, 241 N.W.2d 788, 791 (1976). Restatement (Second) of Agency § 1, cmt. b (1958) states:

> ***4** The agency relation results if, but only if, there is an understanding between the parties which, as interpreted by the court, creates a fiduciary relation in which the fiduciary is subject to the directions of the one on whose account he acts. It is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries * * *.

Absent "any persuasive evidence of manifestation of consent, right of control, and fiduciary relationship, there is no agency as a matter of law." *Jurek,* 308 Minn. 200-01, 241 N.W.2d at 793.

The record indicates that Lakeshore did not retain a right of supervision or control sufficient to prevent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Florey from completing the work as he wished, and there is no evidence of "continued subjection to the will of the principal." Florey received notice by telephone of those advertisers he should contact to set up photo sessions, but was free to set up the sessions to fit his own schedule, and free to physically arrange the content of the photos. He provided all of his own photo and lighting equipment, developed his own film, and chose the photos to be given to Lakeshore.

The district court did not err in its determination that MSK failed to establish the existence of a genuine issue of material fact as to whether Lakeshore retained sufficient control over Florey to allow a jury to find an agency relationship, and properly granted summary judgment in favor of Lakeshore.

III. Equitable Estoppel

MSK argues that the facts of the present case should preclude Lakeshore from denying that it is liable for Florey's negligence because Lakeshore solicited the advertisement, dispatched Florey with a press identification pass that described him as a representative of Lakeshore, and despite the long-term relationship between Bame and Lakeshore, Lakeshore never informed Bame that Florey was not the newspaper's employee or agent. MSK argues that Bame had the right to assume that Florey was an employee of Lakeshore and relied on the assumption that Lakeshore would be responsible if any problems arose during the photo shoot.

> The doctrine of equitable estoppel may be asserted to bar a litigant from denying the truth of representations of fact previously made where the following requirements are met:
> (1) There must be a misrepresentation of a material fact;
> (2) The party to be estopped must be shown to have known that the representation was false;
> (3) The party to be estopped must have intended that the representation be acted upon;
> (4) The party asserting the estoppel must not have had knowledge of the true facts; and
> (5) The party asserting the estoppel must have relied upon the misrepresentation to his detriment.

*Transamerica Ins. Group v. Paul,* 267 N.W.2d 180, 183 (Minn.1978) (citations omitted).

MSK has not satisfied these requirements. MSK presented no evidence that Lakeshore made a misrepresentation (or any representation at all) as to Florey's employment status, much less that Lakeshore knew that the representation was false and intended it to be acted upon. Bame testified at her deposition that she "didn't have any black and white understanding," that she "just assumed Florey was an employee," and "it never entered [her] mind to know if he was a separate contractor or not." Bame's testimony supports only a finding that she lacked knowledge that Florey was an independent contractor rather than an employee of Lakeshore. Having failed to prove that Lakeshore made a misrepresentation of a material fact, MSK cannot assert that it relied upon the misrepresentation to its detriment.

*5 MSK has not provided sufficient evidence to establish the elements of a claim of equitable estoppel and, therefore, the district court properly granted summary judgment in favor of Lakeshore.

Affirmed.

Not Reported in N.W.2d, 2000 WL 388062 (Minn.App.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.