UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

Michael D. Smith,

Plaintiff,

-vs-

UnumProvident Corporation and
The Paul Revere Life Insurance Company,

Defendants.

Court File No. 01-1301 (JNE/AJB)

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MICHAEL D. SMITH'S MOTION FOR JUDGMENT

---

TO: DEFENDANTS ABOVE-NAMED AND THEIR ATTORNEY JOHN HARPER, III, ESQ., KRASS MONROE, P.A., 8000 NORMAN CENTER DRIVE, SUITE 1000, MINNEAPOLIS, MN 55437.

I.

Introduction

Dr. Michael D. Smith ("Smith") commenced this lawsuit to recover damages caused by his insurers' refusal to make monthly disability benefit payments and to seek this Court's construction of the three insurance policies Smith purchased from Defendants.

The Court has already ruled on previous cross-motions relating to Smith's breach of contract claim and whether IME and royalty income are properly included in the calculation of Smith's "Monthly Earnings." Presently before the Court are cross-motions seeking judicial determination of three outstanding issues. The first issue is whether the inflation adjustment to Smith's Prior Earnings is a compounding interest calculation or a simple interest calculation. The second issue is which of Smith's paychecks should be included in the calculation of Smith's "Prior Earnings."

The third issue is whether Smith has proven by a preponderance of the evidence that he is entitled to equitable relief.

The parties have stipulated to submit this matter to the Court for decision in lieu of a court trial. The parties have further stipulated to certain facts relating to this lawsuit. The record is otherwise as previously submitted to the Court.[1]

II.

Facts[2]

A. Smith, A Distinguished Cervical Spine Surgeon, Becomes Disabled And Is Thereafter Unable To Return To His Former Productivity.

Smith is an accomplished cervical spine surgeon with a distinguished academic and professional record of achievement. *See, Curriculum Vitae*, DeVincke Afft., Exhibit A.

From 1989 through 1992, Smith purchased three occupational disability insurance policies from Defendant Paul Revere. Smith Afft. ¶2. Those policies are identified as numbers 2588399, 2454784 and 2407185 and are hereinafter referred to as the "Policies". DeVincke Afft. Exhs. B, C, and D. Smith described his occupation as "spine surgeon" on his applications for disability insurance submitted to Defendant Paul Revere on or about June 18, 1989, May 7, 1990, and October 29, 1992, respectively. DeVincke Afft., Exh. E, F, and G. Smith purchased the policies through

---

[1] Plaintiff does not request oral argument before the Court as the parties have stipulated that the unresolved issues may be decided by the Court upon the record and these submissions.

[2] The facts are based upon three affidavits and the exhibits thereto. The first two affidavits, referenced as "DeVincke Afft." and "Smith Afft.", were previously submitted to the Court in support of Michael D. Smith's motion for summary judgment. The third affidavit, referenced as "DeVincke Afft. II" is submitted herewith.

insurance agent Mary Cariolano. Ms. Cariolano assured Smith that the Policies would protect against the loss of surgical-related income due to any subsequent disability. Smith Afft. ¶ 3. Further, Smith himself understood that these three occupational disability insurance policies would help insure against the loss of surgery-derived income in the event Smith became disabled. Smith Afft., ¶ 4. A letter addressed to Smith by a Vice President of Paul Revere dated January 8, 1993, made clear that "the fact that you [Smith] could be working in some other occupation or specialty would not preclude the payment of Total Disability benefits." DeVincke Afft., Exh. I.

On July 3, 1997, Smith suffered a disabling spinal cord injury while performing emergency surgery on a young woman who had been struck by an automobile. Smith Depo., pp. 25-29; DeVincke Afft., Exh. J. The lengthy surgery, while ultimately successful for Smith's patient, resulted in a permanent, debilitating spinal injury to Smith. *Id.*

Beginning in July of 1997, Smith was completely unable function as a cervical spine surgeon for more than two years. Smith Afft., ¶ 5. By December of 1999, Smith's condition had somewhat stabilized, and he returned to surgical practice in a limited capacity. Despite his best efforts, however, Smith remains less than 50% as productive as he was prior to suffering the aforementioned spine injury. Smith Depo. p. 93; DeVincke Afft., Exh. J.

Following his injury, Smith made a claim for disability benefits. At first, Smith was considered "Totally Disabled"[3] because he was completely unable to perform the important duties

---

[3] The Policies provide:
"Total Disability" means that because of Injury or Sickness:
a. Your are unable to perform the important duties of Your Occupation; and
b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of

of his vocation - spine surgeon. As a "Totally Disabled" insured, Smith received the maximum monthly benefit payment.

After his return to surgical practice in a reduced capacity in 1999, Smith was considered "Residually Disabled"[4] pursuant to the terms of the Policies.

B. The Insurance Policies.

The Policies' provide that a residually disabled insured is entitled to monthly benefit payments equal to (Loss of Earnings / Prior Earnings) x Maximum Monthly Amount. *See* Section 2.2 of all three policies.

With respect to policy #2588399, if Smith's Loss of Earnings for any month equals 75% or more of his Prior Earnings, Smith is entitled to maximum benefit amount of $10,000.00.

With respect to policies # 2454784 and 2407185, if Smith's Loss of Earnings for any month equals 80% or more of his Prior Earnings, Smith is likewise entitled to receive the maximum benefit amount.[5]

---

no benefit to You."

[4] The Policies provide:
"Residually Disabled", prior to the commencement Date, means that due to Injury or Sickness which begins prior to age 65:

a. (1) You are unable to perform one or more of the important duties of Your Occupation; or
(2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and

b. You are receiving Physician's Care. . . .; and

c. You are not Totally Disabled;

[5] The maximum benefit amounts for policies #2454784 and 2407185 are not fixed but increases pursuant to a cost of living adjustment ("COLA") riders purchased by Smith for each policy. The COLA is due monthly and has increased the monthly benefit due Smith by 4%

The Policies further provide that "Loss of Earnings" = "Prior Earnings" - "Monthly Earnings" for the month for which a benefit is claimed. Prior Earnings, in turn, increase at least 7% annually. *See* page 7 of Exhibits B, C and D. The net result of these two equations is that Smith's "Monthly Earnings" are crucial to the calculation of his disability benefit.

From the inception of Smith's claim for disability benefits in 1997 until October 2000, Defendants consistently considered only Smith's surgical income in calculating his "Monthly Earnings". Smith Afft., ¶¶ 12, 17 and 18.

Section 2.2. of all three of the Policies provides in pertinent part:

> Monthly Earnings means Your salary, wages, commissions, bonuses, fees, and income earned for services performed. If You own any portion of a business or profession, it means:
>
> a. Your share of the income earned by that business or profession;
>
> b. Less Your share of business expenses which are deductible for Federal income tax purposes;
>
> c. Plus Your salary and any contributions to a pension or profit sharing plan made on Your behalf.
>
> *Monthly Earnings does not include*:
>
> a. Income from deferred compensation plans, disability income policies, or retirement plans; or
>
> b. *Income not derived from Your vocational activities*.

---

annually since July 3, 1997.

(Emphasis added).

Stated simply, during the first three years and eight months of its administration of Smith's claim, Defendants properly included only Smith's income earned from his spinal surgical practice in determining his Monthly Earnings. Smith Afft. ¶ 12 and 18.

During that time, Defendants had full knowledge that Smith was receiving income from other sources – including conducting independent medical examinations ("IMEs"). Smith Afft. ¶ 13. In October 2000, however, Defendants ceased monthly benefit payments and requested additional information from Smith regarding his income from non-surgical sources. Smith Afft. ¶¶ 14 and 15. After rebuffing Smith's numerous attempts to solicit the resumption of disability benefit payments, Defendants announced their new method of calculating Smith's disability income benefit.

Under their new methodology, Defendants proposed to include <u>all</u> of Smith's income, no matter how earned, in calculating his disability income benefit. Smith Afft. ¶ 15. Smith has testified that "had I been informed that Unum would alter its methodology in calculating my disability income benefit, I would have performed IMEs sparingly. I would have channeled my energies into other rehabilitative, charitable, or educational opportunities." Smith Afft. ¶ 19.

Now, the parties bring cross-motions for judgment in their favor. This Court should enter judgment in favor of Smith and find that the Policies provide for a compounding 7% inflation adjustment to Prior Earnings, that Smith's Prior Earnings should be calculated using both his January 6, 1997, and July 3, 1997 paychecks, and that Defendants are equitably estopped from including Smith's IME income in the calculation of Monthly Earnings.

III.

Argument and Authorities

A. Insurance Policy Interpretation.

"[T]he interpretation of insurance contract language is a question of law as applied to the facts presented." *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn. 1992). The rule in Minnesota is that an insurance policy is to be liberally construed in favor of the insured and every reasonable doubt as to the meaning of the language used therein is to be resolved in favor of the insured. *See*, 9 Dunnell, Dig., 3d Ed., § 4872.

An ambiguity exists if there is language in the contract that is reasonably subject to more than one interpretation. *Columbia Heights Motors, Inc. v. Allstate Insurance Co.*, 275 N.W.2d 32, 34 (Minn. 1979). Ambiguities and doubts regarding a contract's terms must be resolved against the drafter. *Empire State Bank v. Devereaux*, 402 N.W.2d 584, 587 (Minn.App.1987). An ambiguity in an insurance policy will be liberally construed against the insurer, *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn. 1992), and in accordance with the reasonable expectations of the insured. *Columbia Heights*, 275 N.W.2d at 36.

In this case, then, every reasonable doubt as to the policy's terms must resolved in Dr. Smith's favor. This rule applies in full force to accident and health policies. 3 Dunnell, Dig. & Supp. § 4872. "Further, because of the unique circumstances that surround a layperson's purchase of an insurance policy, '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.'" *Hubred v. Control Data*

*Corp., 442 N.W.2d 308, 311, (Minn. 1989) (citing Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn. 1985) and (*quoting* Robert E. Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv. L.Rev. 961, 967 (1970)).

In *Weum v. Mutual Benefit Health & Acc. Ass'n*, 237 Minn. 89, 54 N.W.2d 20 (1952), the Minnesota Supreme Court held that,

> In resolving doubts as to the meaning to be given the terms of an insurance contract, this court will note the purposes for seeking insurance and will avoid an interpretation which would forfeit rights which the insured may have believed he was securing, but which, because of the failure of the insurer to use clear language, are now cast in doubt.

*Id.* at 105, 54 N.W.2d at 29.

It is against the background of these legal principles that this Court should examine the litigant's respective positions.

B. The Policies Provide That Smith's Prior Earnings Increase By Application Of A 7% Compounding Interest Calculation.

The first issue in dispute is the correct application of the Policies' inflation adjustment to Prior Earnings. The general rule is that, absent either a contract or express statutory provision authorizing compounding interest prior to judgment, only simple interest may be recovered. *Powell v. Retirement Bd. of Allegheny County*, 246 A.2d 110, 115 (Pa. Supr. 1968); 47 C. J. S., Interest & Usury, , 11 Del. J. Corp. L. 595, 601)§ 6(c).

Here, the Policies provide that UNUM will adjust its calculation of Smith's Prior Earnings by an annual inflation increase of at least 7%.[6] By its plain language, the Policies state the each year,

[6] The Policies provide:

> Starting as of the first Review date, We will make an inflation

Prior Earning will be adjusted upward by at least 7% and that the resulting new Prior Earnings calculation will be used by Defendants for a one year period in calculating benefits due. At the end of each one year period, an additional adjustment of 7% will be made to the Prior Earnings calculation. Accordingly, the process, as described in the Policies would function as follows given a hypothetical Prior Earnings figure of $100,000.00:

| Year of Disability | Prior Earnings |
|---|---|
| First year | $100,000.00. |
| Second | $100,000.00 x 7% = $107,000.00 |
| Third year | $107,000.00 x 7% = $114,490.00 |

If Defendants had intended for the Prior Earnings inflation adjustment to be a simple interest calculation, than the policy should have expressly stated that. If the Court finds that the Policies are ambiguous as to whether the inflation adjustment to Prior Earnings is a simple or compound interest calculation, than that ambiguity should be resolved in favor of Smith.

---

adjustment to Your Prior Earnings. We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable. However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

C. <u>The Policies Provide That Smith's Prior Earnings Be Calculated With Inclusion Of His January 6, 1997 Paycheck, His July 3, 1997 Paycheck And All Pay Received Between Those Dates</u>.

Policies # 2454784 and 2407185 define "Prior Earnings" as follows:

"Prior Earnings" means the greater of:

a. Your average Monthly Earnings for the 6 calendar months just before your Disability began; or

b. Your highest average Monthly Earnings for any 2 successive years during the 5 year period just before Your Disability began.

Monthly Earnings means "Your salary, wages, commission bonuses, fees and income earned for services performed."

On January 6, 1997, Smith received a paycheck for $11,538.00. DeVincke Afft. II, Exhibit A. This paycheck was for the pay period ending December 27, 1996. *Id.* On July 3, 1997, Smith received a paycheck for $15,000.00 for pay period ending June 27, 1997. DeVincke Afft. II, Exhibit B. On July 3, 1997, Smith suffered a disabling spinal cord injury while performing emergency surgery on a young woman who had been struck by an automobile. Smith Depo., pp. 25-29; DeVincke Afft., Exh. J.

Smith contends that both checks are properly included in the calculation of his Prior Earnings under Policies # 2454784 and 2407185 because both checks were received by Smith within 6 calendar months of his disability. Because January 6th and July 3, the date of Smith's disability, are both within 6 calendar months of his disability, the Court should grant judgment in Smith's favor on this issue.

D. Unum Should Be Equitably Estopped From Including Smith's IME Income In Its Calculation Of Smith's "Monthly Earnings."

Under Minnesota law, "[a] party seeking to invoke the doctrine of equitable estoppel has the burden of proving three elements: (1) that promises or inducements were made; (2) that it reasonably relied upon the promises; and, (3) that it will be harmed if estoppel is not applied." *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990).

From the inception of Smith's claim for disability benefits in 1997 until October 2000, Defendants consistently considered only Smith's surgical income in calculating his "Monthly Earnings." Smith Afft., ¶¶ 12, 17 and 18. During the first three years and eight months of its administration of Smith's claim, Defendants included only Smith's income earned from his spinal surgical practice in determining his Monthly Earnings. Smith Afft. ¶ 12 and 18.

During that time, Defendants had full knowledge that Smith was receiving income from other sources – including conducting independent medical examinations ("IMEs"). Smith Afft. ¶ 13. In October 2000, however, Defendants ceased monthly benefit payments and requested additional information from Smith regarding his income from non-surgical sources. Smith Afft. ¶¶ 14 and 15.

Smith, in reliance upon Defendants' prior administration of his claim for benefits, did in fact perform IMEs for pay. By Order dated June 17, 2003, this Court ruled that the Policies permit Defendants to include this income in the calculation of Smith's "Monthly Earnings." Including Smith's IME income in his monthly earnings is detrimental because as Smith's Monthly Earnings increase, Smith's disability benefit could potentially be decrease. This is true because the Policies provide for an off-set in the case of a residually disabled individual.

Smith has testified that "had I been informed that Unum would alter its methodology in calculating my disability income benefit, I would have performed IMEs sparingly. I would have channeled my energies into other rehabilitative, charitable, or educational opportunities." Smith Afft. ¶ 19. It was imminently reasonable for Smith to rely upon his insurer's past administration of his benefits in deciding to perform IMEs for pay. That income should not now be held against Smith in the calculation of his Monthly Earnings.

For these reasons, this Court should exercise its equitable powers to prevent Defendants from including IME income that Smith would not have incurred but for Defendants misleading and inconsistent administration of the Policies.

IV.

Conclusion

For all of the foregoing reasons, Dr. Michael Smith requests that this Court enter judgment in his favor and estop Unum from including IME income in the calculation of Smith's "Monthly Earnings." Further, Smith requests this Court enter judgment in his favor and declare that the Policies provide for a compounding 7% increase in the calculation of Prior earnings, and that both the January 6, 1997, paycheck and July 3, 1997, paycheck are includable in the calculation of Smith's Prior Earnings.

Respectfully submitted,

Dated: January 13, 2006.

**BONNER & BORHART LLP**

By /s/ Thomas F. DeVincke
Thomas F. DeVincke (#301759)
1950 U.S. Bank Plaza
220 South Sixth Street
Minneapolis, MN 55402-4511
Telephone (612) 313-0735
***Attorneys for Plaintiff Michael D. Smith***