UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael D. Smith,

Plaintiff,

vs.

UnumProvident Corporation and
The Paul Revere Life Insurance Company,

Defendants.

Court File No 01-1301 JEL/JGL

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

## INTRODUCTION

Defendants respectfully offer this Reply Memorandum of Law in Support of their Motion for Summary Judgment. Plaintiff Michael D. Smith's ("Smith") summary judgment motion papers highlight his fundamental misunderstanding of the application of the total and residual disability provisions in the Policies at issue in this case. Defendants had no reason or basis to consider Smith's independent medical examination ("IME") income while administering Smith's claim for total disability benefits. The IME (and any other) income only became relevant when Smith resumed performing cervical spine surgeries in 1999 which then required Defendants to evaluate Smith's entitlement to benefits under the residual disability provisions in the Policies.

For similar reasons, Defendants are not equitably estopped from including Smith's IME income in its calculation of Smith's Monthly Earnings because Smith cannot establish an equitable estoppel claim as a matter of law. Lastly, Defendants accurately calculated

Smith's prior Monthly Earnings under the Policies and included the proper number of Smith's paychecks in that calculation.

## LEGAL ARGUMENT

### I. THE 7% PERCENT ANNUAL INCREASE TO SMITH'S PRIOR EARNINGS MUST BE CALCULATED USING SIMPLE INTEREST.

The definition of Prior Earnings in the Policies is as follows:

> Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings. We will multiply Your Prior Earnings by the CPI Factor. The result will be used until the next Review Date to compute Residual Disability benefit amounts payable. However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

Smith's memorandum cites no legal authority for his contention that the seven percent (7%) inflation adjustment contained in the definition of Prior Earnings must use a compound, rather than a simple, interest factor. Instead, Smith merely alleges that this policy language is ambiguous and should be construed in his favor because "If Defendants had intended for the Prior Earnings inflation adjustment to be a simple interest calculation, then the Policy should have expressly stated that." (Plaintiff's Brief, pg. 9).

Interpretation of an unambiguous insurance contract, phrase or word presents an issue of law for the court. American Commerce Ins. Brokers v. Minnesota Mut. Fire & Cas., 551 N.W.2d 224, 228 (Minn. 1996); Transport Indem. Co. v. Dahlen Transportation, Inc., 161 N.W.2d 546, 550 (Minn. 1968). Clear and unambiguous contract language cannot be disregarded, even to give affect to the policy's purpose of

protecting the insured from loss. Employers' Mutual Casualty v. Kangas, 245 N.W.2d 873, 876 (Minn. 1976) (refusing to circumvent clear policy language excluding coverage). Therefore, courts should not strain to find an ambiguity, pervert the parties' contract, or exercise inventive powers to create an ambiguity. See, e.g., American Commerce, 551 N.W.2d at 228 (warning trial courts to "fastidiously guard against the invitation to 'create ambiguities' where none exist"); Hubred v. Control Data, 442 N.W.2d 308, 310-311 (Minn. 1989) (forbidding courts from reading ambiguity into plain language).

As such, the Court is to apply the plain and ordinary meaning of this policy language. Smith v. St. Paul Fire & Marine Ins. Co., 353 N.W.2d 130, 132 (Minn. 1984) (if the terms of an insurance policy are not specifically defined, they are to be given their plain, ordinary and popular meaning); Vaubel Farms, Inc. v. Shelby Farmers Mut., 679 N.W.2d 407, 410 (Minn. Ct. App. 2004) (in order to effectuate the parties' intent, unambiguous language must be accorded its plain and ordinary meaning).

Smith cannot ignore the unambiguous language and intent of the Policies in favor of his tortured interpretation. The cases cited in Defendants' moving papers properly applied the plain and ordinary meaning of these types of policy provisions to conclude that simple interest must be applied. Turner v. UnumProvident Corporation, Case No. 03-75180 (E.D. Mich. August 30, 2004); Nieto v. The Paul Revere Life Insurance Company, Case No. BC 290702 (Sup. Ct. Cal. January 30, 2004). Accordingly, the seven percent (7%) annual increase to Smith's Prior Earnings must use a simple interest factor.

## II. DEFENDANTS PROPERLY CALCULATED SMITH'S "PRIOR EARNINGS" UNDER THE POLICIES.

Smith argues that both his January 6, 1997 paycheck (for work through December 27, 1996) and July 3, 1997 paycheck (for work through June 27, 1997) must be included in the calculation of Prior Earnings under the Policies.[1] (Plaintiff's Brief, p. 10). The Policies expressly provide that Prior Earnings is based upon "Your average Monthly Earnings for the 6 calendar months just before Your Disability began." Smith's contention that all paychecks received from 1/1/97 to 7/3/97 must be included in this calculation is contrary to the plain language of the Policies because it spans a period of time greater than the 6 months permitted by the Policies. Accordingly, Defendants are entitled to summary judgment on this issue as a matter of law.

## III. DEFENDANTS ARE NOT EQUITABLY ESTOPPED FROM USING SMITH'S IME INCOME TO CALCULATE MONTHLY EARNINGS UNDER THE POLICIES.

Smith's primary argument for equitable estoppel appears to be that Defendants knew that Smith was receiving income from performing IMEs but did not consider this income in its total disability calculations. (Plaintiff's Brief, pg. 11). To reiterate, Smith has a basic misunderstanding regarding the application of the total and residual disability portions of the Policies and the administration of his claim for benefits under each respective provision.

[1] Smith's argument rests on the faulty premise that he is an accrual taxpayer. However, since Smith is clearly is a cash basis taxpayer, the relevant inquiry is income he actually received in the prior six months.

While Defendants administered the Policies under the total disability provisions, Smith's IME income was, by definition, not a factor under the plain and unambiguous total disability policy language. In fact, Smith's IME income (or income from other sources) has nothing at all to do with the substantial and material duties of his occupation under the total disability definition. Rather, income from other sources is only considered if an insured is residually disabled under the Policies.

Defendants attempted to educate Smith and his counsel regarding this issue on multiple occasions.[2] On August 29, 2000, Defendants informed Smith that his return to surgical practice, even on a part-time or trial basis, necessitated Defendants reviewing his claim under the residual disability provisions of the Policies. (PRLCL 0513).[3] Defendants then sent Smith September 15, 2000 and October 19, 2000 correspondence indicating that Defendants would be paying residual disability benefits to Smith in accordance with the Policies. (PRLCL 00577-00579; 01016-01017). Defendants also reminded Smith of the methodology used to calculate residual disability benefits under the Policies on October 31, 2000. (PRLCL 01038-01040).

Accordingly, Defendants are not equitably estopped from including Smith's IME income in the calculation of Monthly Earnings under the Policies. Defendants are therefore entitled to summary judgment as a matter of law on this claim.

---

[2] Interestingly, in November, 1999, Smith and his counsel appeared to acknowledge that Smith's return to his surgical practice, even on a trial basis, triggered the residual disability provision of the Policies. (PRLCL 00436).

[3] All Bates references refer to the administrative claim file previously filed with the Court.

**CONCLUSION**

For the foregoing reasons and those set forth in its previous Memorandum, Defendants are entitled to summary judgment on the three remaining legal issues in this case.

Dated: January 27, 2006.

**KRASS MONROE, P.A.**

s/C. John Jossart
John Harper III (41397)
C. John Jossart (295048)
8000 Norman Center Drive, Suite 1000
Minneapolis, MN 55437
Phone: 952-885-5999
Fax: 952-885-5969
Attorneys for Defendants

G:\WPDATA\U\UNUMPROVIDENT 10363\038-SMITH.M\PLD\REPLY MEMO OF LAW IN SUPPORT OF SJ.DOC