UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael D. Smith,

Plaintiff,

v.

Civ. No. 01-1301 (JNE/AJB)
ORDER

UnumProvident Corporation and The Paul Revere Life Insurance Company,

Defendants.

Michael Smith purchased disability-insurance policies from UnumProvident Corporation and The Paul Revere Life Insurance Company (collectively, Defendants) in 1989, 1990, and 1992. After injuring his spinal cord in July 1997, he applied for and received benefits under the policies. After a dispute arose as to the administration of Smith's claim, he brought this action seeking declaratory and monetary relief. Eventually, the parties entered into several stipulations of fact and agreed to submit their remaining disputes to the Court for decision. The parties dispute the following issues: (1) Is the seven percent annual increase referenced in the definition of Prior Earnings in the policies calculated using simple or compound interest?; (2) What is the proper number of paychecks to include in the calculation of Smith's Prior Earnings under the policies?; and (3) Are Defendants equitably estopped from claiming that Smith's income from independent medical examinations (IME) must be included in the calculation of Monthly Earnings under the policies?

## I. DISCUSSION

### A. Seven percent increase

The parties' first dispute requires the Court to interpret Smith's policies. The parties do not dispute that Minnesota law governs the policies' interpretation. Under Minnesota law, the

interpretation of an insurance policy is a question of law. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002); *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994). If the language of the policy is unambiguous, it must be given its plain and ordinary meaning. *Thommes*, 641 N.W.2d at 880; *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn. 1997). "On established facts, '[i]nsurance coverage issues are questions of law for the court.'" *N.K.K. by Knudson v. St. Paul Fire & Marine Ins. Co.*, 555 N.W.2d 21, 24 (Minn. Ct. App. 1996) (quoting *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn. 1992)). The dispute involves the following language that appears in Smith's policies:

> Starting as of the first Review Date, We will make an inflation adjustment to Your Prior Earnings. We will multiply Your Prior Earnings by the CPI Factor. The results will be used until the next Review Date to compute Residual Disability benefit amounts payable. However, the inflation adjustment increase will be at least 7% of Your Prior Earnings amount.

Smith contends that Defendants should compound the seven percent inflation adjustment increase. Defendants assert that the seven percent inflation adjustment increase should not be compounded.

The Court begins by setting forth several definitions of terms in the policies. Two of Smith's policies define Prior Earnings as the greater of "Your average Monthly Earnings for the 6 calendar months just before Your Disability began" and "Your highest average Monthly Earnings for any 2 successive years during the 5 year period just before Your Disability began." The remaining policy defines Prior Earnings as the greater of "Your average Monthly Earnings for the year just before Your Disability began" and "Your highest average Monthly Earnings for any 2 successive years during the 5 year period just before Your Disability began." The policies define Review Date as:

> the date that occurs:
>
> a. After each successive 12 months of Disability; and

b. While your Disability continues.

No Review Date will occur on or after Your 65th birthday.

The policies' definition of CPI Factor is:

> "CPI Factor" means the result of the CPI Change as of the current Review Date multiplied by the CPI Change for each prior Review Date occurring since the Disability began. The CPI Factor as of the first Review Date will equal the CPI Change as of that Review Date. A CPI Factor is determined as of each Review Date while Disability continues.

The CPI Change is a quotient calculated at each Review Date: "We will divide the CPI for the most recent Index Month by the CPI for the Index Month prior to the most recent Index Month." The CPI is the Consumer Price Index for All Urban Consumers. The policies define Index Month as "the calendar month four months prior to the calendar month in which a Review Date occurs." The first Index Month is "the calendar month 4 months prior to the month in which your Disability began."

Having reviewed the policies, the Court discerns no ambiguity with respect to whether they provide for an inflation adjustment increase of seven percent compounded annually. According to the policies, an inflation adjustment increase to Prior Earnings is made at each Review Date. The inflation adjustment increase is made to Prior Earnings, which is a fixed amount. The product of Prior Earnings and the CPI Factor, which is an inflation multiplier, yields the adjusted Prior Earnings. If this product does not generate an increase that exceeds seven percent—that is, the CPI Factor does not exceed 1.07—then the policies provide that the increase shall be seven percent. At the next Review Date, these calculations are repeated using an updated CPI Factor. The policies are unambiguous, and they do not provide for an inflation adjustment increase of seven percent compounded annually.

**B. Number of paychecks**

The parties' next dispute turns on the definition of Prior Earnings that appears in two of the policies. As noted above, the two policies define Prior Earnings in relevant part as "Your average Monthly Earnings for the 6 calendar months just before Your Disability began." The two policies define Monthly Earnings in part as "Your salary, wages, commissions, bonuses, fees, and income earned for services performed," and they allow "either the cash or accrual accounting method." The parties cast their dispute in terms of the number of paychecks that should enter into the calculation of Prior Earnings. The parties are actually asking the Court to declare the start and end of the period over which Smith's average Monthly Earnings shall be calculated. To resolve this dispute, the Court turns to the meaning of "calendar month."

The policies do not define "calendar month." The term's ordinary meaning is either "one of the months as named in the calendar" or "the period from a day of one month to the corresponding day of the next month if such exists or if not to the last day of the next month." *Webster's Third New International Dictionary* 316 (1993); *see Hammer v. Investors Life Ins. Co. of N. Am.*, 511 N.W.2d 6, 9 (Minn. 1994). In this case, the parties agree that Smith's disability began in July 1997, but they dispute when in that month it began. Under the first meaning listed above, the six calendar months just before Smith's disability began would be January 1997 through June 1997. Under the second meaning listed above, the six calendar months just before Smith's disability began would start a few days into January 1997 and end a few days into July 1997. Because the policies are reasonably subject to more than one interpretation, they are ambiguous. *See Hammer*, 511 N.W.2d at 8.

Where, as here, an insurance policy is ambiguous, a court construes the ambiguity in favor of the insured. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383

N.W.2d 645, 652 (Minn. 1986). The Court is unable to construe the ambiguity in Smith's favor at this time because the parties dispute when Smith's disability began. They have not offered any arguments to support their positions. The Court declines to speculate as to when in July 1997 Smith's disability began. Accordingly, the Court cannot declare the period used to calculate Smith's Prior Earnings.

**C. Equitable estoppel**

The parties' final dispute is whether Defendants are equitably estopped from claiming that Smith's IME income is part of his monthly earnings. Earlier in this litigation, the Court interpreted the policies to include Smith's IME income in his Monthly Earnings. To invoke the doctrine of equitable estoppel, Smith must prove: "(1) that promises or inducements were made; (2) that [he] reasonably relied upon the promises; and (3) that [he] will be harmed if estoppel is not applied." *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990).

According to Smith, Defendants did not include his IME income in calculating his benefits from his claim's inception to October 2000. He asserts that he relied on Defendants' prior administration of his claim in deciding to perform IME. By including his IME income in his Monthly Earnings, Smith contends that his benefits will decrease. Consequently, Smith contends, Defendants are equitably estopped from including his IME income in his Monthly Earnings.

Smith's argument overlooks his transition from total disability to residual disability under the policies. Briefly, Smith was totally disabled until late 1999. Per the policies, Defendants did not account for Smith's IME income in calculating his total disability benefits. Smith's return to his surgical practice in late 1999 rendered the policies' residual disability provisions applicable. By letter dated August 29, 2000, Defendants informed Smith that they had recently reviewed his

claim file and that they would administer his claim under the residual disability provisions. In September and October 2000, Defendants reiterated that they would calculate Smith's benefits under the policies' residual disability provisions. They also stated that they had paid Smith full monthly benefits into October 2000, that they had overpaid him almost $30,000 through August 2000, and that they reserved the right to request reimbursement for any overpayments made on or after September 1, 2000. In his affidavit, Smith acknowledges that Defendants did not include his IME income in calculating his benefits before October 2000, that Defendants changed their calculation method that month, and that they included his IME income under their new method. In short, there is no evidence in the record of a promise by Defendants to exclude Smith's IME income from the calculation of his residual disability benefits. Nor is there any evidence that Defendants induced Smith to perform IME. In fact, Defendants informed Smith that they would administer his claim under the policies' residual disability provisions and that they would account for his IME income. Accordingly, Defendants are not equitably estopped from claiming that Smith's IME income is part of his monthly earnings. *Cf. N. Petrochemical Co. v. U.S. Fire Ins. Co.*, 277 N.W.2d 408, 411 (Minn. 1979) ("Estoppel does not continue indefinitely if the circumstances relied on to justify estoppel cease to be operational.").

## II. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for judgment [Docket No. 45] is GRANTED IN PART and DENIED IN PART.

2. Smith's motion for judgment is DENIED.

3. The policies do not provide for an inflation adjustment increase of seven percent compounded annually.

4. Defendants are not equitably estopped from including Smith's income from independent medical examinations in his Monthly Earnings.

Dated: June 19, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge